FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 17, 2025

SEAN F. McAVOY, CLERK

1

2

3

4          UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF WASHINGTON

5

6  ROSA R.,[1]                    | No.   4:25-CV-5087-EFS

7                  Plaintiff,

8          v.                      **ORDER AFFIRMING THE
                                   ALJ'S DENIAL OF BENEFITS**
9  FRANK BISIGNANO O'MALLEY,

10 Commissioner of Social Security,

11                 Defendant.

12

13

14         Due to a marginal education, fibromyalgia, shoulder injuries,

15 headaches, anxiety, and major depressive disorder, Plaintiff Rosa R.

16 claims that she is unable to work fulltime and applied for disability

17 benefits and supplemental security income benefits. She appeals the

18

19 denial of benefits by the Administrative Law Judge (ALJ) on the

20 _____

21 [1] For privacy reasons, Plaintiff is referred to by first name and last

22 initial or as "Plaintiff." *See* LCivR 5.2(c).

23

grounds that the ALJ improperly found that Plaintiff had a marginal education rather than illiteracy, and improperly assessed Plaintiff's credibility as to her headaches. As is explained below, Plaintiff has not established any consequential error. The ALJ's denial of benefits is affirmed.

## I.    Background

In June 2022, Plaintiff filed an application for benefits under Title 2 and in April 2023 filed an application for benefits under Title 16, claiming disability beginning February 1, 2020, based on the physical and mental impairments noted above.[2] Plaintiff's claims were denied at the initial and reconsideration levels.[3]

After the agency denied Plaintiff benefits, ALJ David Johnson held a telephone hearing in May 2024, at which Plaintiff appeared with

---

[2] AR 362-368, 369-377, 401.

[3] AR 167, 173, 180, 185.

her representative.[4]  Plaintiff and a vocational expert testified.[5] An interpreter assisted Plaintiff during the hearing.[6]

After the hearing, the ALJ issued a decision denying benefits.[7] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[8] As to medical opinions, the ALJ found:

- The opinions of state agency consultants Merry Alto, MD, and Michael Brown, PhD, to be persuasive.

- The opinions of consultative examiners Marquetta Washington, ARNP, and Emily Ketchel, PMHNP, to be not persuasive.

---

[4] AR 78-103.

[5] *Id.*

[6] *Id.*

[7] AR 16-45.  Per 20 C.F.R. §§ 404.1520(a)-(g); 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[8] AR 29-33.

- The opinions of state agency evaluators David Morgan, PhD, and Holly Petaja, PhD, to be not persuasive.

- The opinions of examining and treating sources Kirk Holle, PT; William Domarad, DO; Ronald Early, PhD; Scott Hutson, MD; Mary Anne Rose Cunningham, MD; Rodney Johnson, MD; Cathryn Vadala, MD; and Heather Phipps, DO, to be unpersuasive because they pertain to Plaintiff's ability to return to her prior work.[9]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff met the insured status requirements through December 31, 2023, and had not engaged in substantial gainful activity since June 21, 2022, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: obesity, fibromyalgia, shoulder abnormalities, headaches, anxiety, and major depressive disorder.

_____

[9] AR 34-36.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and the ALJ specifically considered Listings 1.18, 14.09, 11.02, 12.04, and 12.06.

- RFC:  Plaintiff had the RFC to perform light work with the following exceptions:

  [work] that consists of simple instructions; that consists of the same tasks over and over; that does not require more than occasional interaction; and that is performed where the general public is typically not present.

- Step four: Plaintiff is unable to perform her past relevant work as an agricultural sorter or industrial cleaner.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a small products assembler (DOT 739.687-030),  router (DOT 222.587-038), and collator operator (DOT 208.685-010).[10]

---

[10] AR 24-38.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Plaintiff timely appealed the denial to the Appeals Council and to this Court.[11]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[12] and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

––––––––––––––––––––

[11] AR 359; ECF No. 1.

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028,

### III.  Analysis

Plaintiff seeks relief from the denial of disability on two grounds. She argues the ALJ erred when he found that she had a marginal education and did not deem her to be illiterate and erred when evaluating Plaintiff's subjective complaints regarding her headaches. As is explained below, the Court concludes that Plaintiff fails to establish the ALJ erred in his evaluation of Plaintiff's ability to read and write in Spanish, or Plaintiff's symptom reports.

—————————————

1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1

2

**A.    Allegations of Illiteracy: Plaintiff fails to establish consequential error.**

3

4

Plaintiff argues the ALJ erred by finding that she had a limited education rather than by finding that she was illiterate.[15]  Specifically,

5

6

Plaintiff argues that the ALJ erred in not including a provision in the

7

RFC that she is illiterate and avers that the ALJ's belief that Plaintiff

8

is able to read is based on a misunderstanding or mischaracterization

9

of Plaintiff's activities.  The Commissioner argues that the ALJ relied

10

on multiple inconsistencies between Plaintiff's hearing testimony and

11

the record as whole to conclude that Plaintiff is not illiterate.[16]

12

13

1.    <u>Standard</u>

14

In 2020, 20 C.F.R. §§ 404.1564(b) and 416.964(b) were amended

15

to omit the requirement that the ALJ consider the claimant's ability to

16

17

18

19

20

———————————

21

[15] ECF No. 9.

22

[16] ECF No. 11.

23

read and understand English when evaluating education. The amended regulation was effective April 27, 2020.[17]

Plaintiff's claim was filed in June 2022; therefore, the amended regulation applies.

20 C.F.R. §§ 404.1564 and 416.964 provide:

(1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

(2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

(3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

---

[17] *See* 85 FR 10586-01, 2020 WL 885690 (Feb. 25, 2020); *see also* Social Security Ruling (SSR) 20-01p, 2020 WL 1083309, n. 8 (Mar. 9, 2020).

1    Additionally, on March 9, 2020, the Administration published a

2    new Social Security Ruling, SSR 20-1p, which interpreted the new

3    regulation.[30]

4    SSR 20-01p provides:

5

6    A. Generally
      We consider an individual illiterate if he or she cannot read
7    or write a simple message, such as instructions or inventory
      lists, even though the individual can sign his or her name.
8    *We will assign an individual to the illiteracy category only if
      the individual is unable to read or write a simple message in
9    any language.*

10
     B. Formal Education and the Ability To Read and Write a
11   Simple Message
     Generally, an individual's educational level is a reliable
12   indicator of the individual's ability to read and write a
     simple message. A strong correlation exists between formal
13   education and literacy, which under our rules means an
     ability to read and write a simple message. *Most individuals
14   learn to read and write at least a simple message by the time
     they complete fourth grade*, regardless of whether the
15   schooling occurred in the United States or in another
     country. We will therefore use an individual's formal
16   education level as the starting point to determine whether
     the individual is illiterate. (emphasis added)[18]
17

18

19   _____

20   [18] SSR 20-1p: How We Determine an Individual's Education Category,

21   2020 WL 1083309 (March 9, 2020).

22

23

2.  <u>Statements Submitted by Plaintiff and Her Third-Party Witness</u>

In her Disability Report filed on July 7, 2022, Plaintiff reported that she was not able to read or write in English[19], but that she can read, write, and understand a short, simple message in Spanish.[20] Months later, on September 14, 2022, Plaintiff completed an Adult Function Report in which she stated that she writes reminders in the calendar to take her medication but forgets to look at the calendar.[21] She said, "If I am reading a book, my mind is elsewhere, I cannot concentrate."[22] She wrote that she does not follow written instructions well, for example missing her medication, because of her memory issues.[23]

---

[19] AR 400.

[20] AR 402.

[21] AR 412.

[22] AR 415.

[23] *Id.*

On May 4, 2023, Plaintiff's friend Maria Rojas Flores completed a Third-Party Function report for her.[24] Ms. Flores wrote that Plaintiff's hobbies were to watch TV or read but stated that Plaintiff is limited to reading 15 minutes at a time because if she reads longer her head will start to hurt.[25]

### 3.     Relevant Medical Records

On February 4, 2020, at a functional capacity evaluation performed by Columbia Physical Therapy, Plaintiff reported that she never went to school and her parents taught her to read and write.[26]

On March 9, 2020, Plaintiff presented to Ronald Early, PhD, for an evaluation at the request of her attorney.[27] Dr. Early noted that Plaintiff reported that "she reads the bible frequently and prays to get better."[28]

---

[24] AR -445

[25] AR 442.

[26] AR 728.

[27] AR 770.

[28] AR 776.

On June 9, 2021, Hilary Richardson, PhD, noted:

"Pt reports being unable to read, so efforts should be made to thoroughly verbally explain."[29] On July 7, 2021, Dr. Richardson wrote "stated goal of no longer feeling anxiety/fear around talking to her ex. has been trying to practice writing answers [in English] for the citizenship exam but can't internalize any of the info [can't read/write Spanish either]."[30]

On July 28, 2021, Dr. Richardson wrote: "Note: pt unable to read, so efforts should be made to thoroughly verbally explain recs). Patient plan: See Assessment & Plan; Treatment Modality: ACT. Psychoeducation/Interventions: self-compassion, acceptance/willingness techniques, awareness/present/mindfulness moment skills, defusion, values engagement and relaxation techniques."[31]

On September 13, 2021, Hilary Richardson, PhD wrote:

Presents with: depression, divorce, hx of DV, family conflict, chronic pain and same as last BHC visit (Today's impression: still working on studying for the citizenship exam. ppl from New Hope provided study materials [in Eng & Span] and are

---

[29] AR 561.

[30] AR 559.

[31] AR 556.

enc'ing her to cont' working on it, but she can't read in either language. lawyer at La Casa Hogar said the only way for pt to get accommodation for exam will be for a licensed psychologist or physician to complete paperwork documenting a sufficient justification for this.[32]

On October 19, 2021, Dr. Richardson, wrote:

(Pt cont's to pursue her goal of taking/passing the citizenship exam, despite facing seemingly insurmountable barriers; pt had no education as a child so never learned to read/ write in Spanish, suffered disabling injuries that still cause her daily pain & prevent her from working, left her [2nd] abusive husband so now has no financial support, & is trying to take the citizenship exam which requires pt to read/ write in English. pt has been diligently studying, trying to learn enough English to manage the test, but reading/writing are brand new skills which take time to consolidate & her learning is hampered by her chronic pain & migraines.[33]

On March 10, 2022, Graciela Ortiz, MSW of Highland Clinic

diagnosed illiteracy and wrote:

(Pt continues to have migraines when studying for her citizen exam. Pt's teacher puts her down d/t making comments about "by this stage you should have learned so many questions". Pt is anxious/worried for not being able to memorize the questions d/t never learning to read/write in the past. Pt goes to online classes for 2hrs (Mon-Wed) and studies the rest of the days. Sometimes her chronic pain makes it difficult for her to get out of her bed and impacts on doing things that she

[32] AR 550.

[33] AR 545.

enjoys.). Progress on plan: (1. When you're frustrated with forgetting things you've studied, remind yourself that what you're doing is hard & you're doing your best.-completed, she has been motivating herself but she forgets what she learned. 2.Continue taking breaks as you study!-completed. 3.Continue making time to knit, cook, and do things for yourself.-she stopped d/t pain and numbing hands. 4.You may schedule an appt to meet w/ a medical provider to discuss possibility of completing paperwork re: citizenship exam; decision will be up to them.- If this approach doesn't work out, we can explore other options. -Did not complete, did not see provider.). Impact on overall function is described as moderate. Symptom reduction is described as mild.[34]

She also wrote: "Pt continues to pursue her goal of passing her Citizenship exam, even though she never learned how to read/write growing up and d/t her daily pain."[35]

On December 27, 2022, Plaintiff was examined by Emily Ketchel, PMHNP, who noted that Plaintiff reported she could only read for 5 minutes before her head hurts.[36]

On March 15, 2023, Plaintiff presented to Elodia Rocha-Guttierez, MSW, who noted that Plaintiff stated: "I read things but

---

[34] AR 518.

[35] *Id*.

[36] AR 631.

can't remember what I read. I forget everything."[37]  She noted further that "Pt reports she was paying for citizenship classes via the telephone for about a year and states "I paid for the classes to study for citizenship and I finally decided to stop because I couldn't remember anything and I was just throwing money away.""[38] Further, when asked how she managed symptoms Plaintiff reported that she would listen to music or read.[39]

    4.   <u>Analysis</u>

          *a.*   <u>*The ALJ's consideration of the issue of education and illiteracy*</u>

The ALJ gave the following reasoning as to his consideration of Plaintiff's allegations of illiteracy:

> Although she reported she could not read or write in Spanish or English, elsewhere she did report reading, even though it was difficult (Ex. B2E; B3F/21, 48; B15F/7; B22F/4) and reading a book was recommended as a coping mechanism for her (Ex. B22F/54, 55). A February 2020 physical evaluation report also noted the claimant was able

---

[37] AR 837.

[38] *Id.*

[39] *Id.*

to understand written instructions without difficulty and communicated appropriately (Ex. B13F/14). In March 2020, she also reported reading the Bible frequently (Ex. B15F/7). In March 2022, the claimant also reported she was taking online classes and studying afterwards the rest of the days for her citizen's exam (Ex. B3F/21), inconsistent with her reports elsewhere about functional abilities and limitations. Her friend also acknowledges that the claimant is able to read as a hobby/interest (Ex. B8E/5). Additionally, her past work as a cleaner, industrial (DOT 381.687-018) required a general educational development language level of 2, which indicates some reading ability.[40]

Plaintiff argues that the ALJ erred in making assumptions based on the record, specifically arguing that the ALJ assumed that reports that she "studied" for her online classes implied she was reading rather than watching videos, that he erred in failing to consider that Plaintiff's reports regarding "reading" the bible might have meant listening to an audio book, and that he erred in considering that Plaintiff had worked in the past at a job that required a reading level of 2.

The Court notes that the most comprehensive testimony given by Plaintiff as to her reading abilities is in her answers to the July 7,

---

[40] AR 33-34.

2022, Disability Report in which she reported that she was unable to read or write in English but was able to read, write, and understand instructions or at least a simple message in Spanish.[41]  While other reports in the record can be subject to interpretation as to whether Plaintiff was reporting her ability to read and write English rather than Spanish, in this report Plaintiff's report was unequivocal that she can read and write in Spanish but not in English.

Plaintiff's statement that she can read and write in Spanish is consistent with her other statements such as her statement that when she is reading a book her mind wanders,[42] that she writes herself reminders,[43] or that "does not follow written instructions well."[44] It is notable that Plaintiff did not state that she cannot read written

---

[41] AR 402.

[42] AR 415.

[43] AR 412.

[44] AR 415.

instructions, but said she does not follow them well due to memory issues.[45]

Similarly, Plaintiff's friend and witness, Ms. Flores, testified that Plaintiff's hobbies were watching TV and reading.[46] She stated that reading for more than 15 minutes will cause headaches for Plaintiff.[47] Again, this statement was consistent with both Plaintiff's report that she can read Spanish and that she reads the bible.[48]

The record indicates that Plaintiff reported a great deal of anxiety that she was required to read and write in English in order to pass her citizenship examination, but her reports to psychologists were made in the context of requesting a written note documenting a justification for an accommodation not requiring a written English examination.

---

[45] *Id.*

[46] AR 442.

[47] Id.

[48] AR 776.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

The record provides substantial support for the ALJ's findings. Because the Court concludes that the ALJ did not fail to consider Plaintiff's testimony, daily activities, and the record as a whole when assessing Plaintiff's ability to read and write in "any" language, the ALJ did not err in finding that Plaintiff had a marginal education.

Thus, the Court concludes that the ALJ did not err in his consideration of Plaintiff's alleged illiteracy.

5.    <u>Summary</u>

Because the ALJ committed no error in his consideration of the multiple inconsistencies between Plaintiff's allegations that she was illiterate and the record, which indicates that she is able to read in Spanish, the Court finds that no consequential error occurred, and a remand is not warranted.

**B.    Symptom Reports: Plaintiff fails to establish consequential error**

Plaintiff argues the ALJ failed to properly assess her subjective complaints regarding migraine headaches.  Plaintiff argues that the ALJ erred because he "referenced physical exams and workups that

indicated generally normal findings."[49] Plaintiff asserts that physical examination results would not provide relevant evidence regarding the existence of a migraine.

### 1. Standard

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[50] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[51] General findings are insufficient; rather, the ALJ must identify what symptom claims are

---

[49] ECF No. 9.

[50] *Molina*, 674 F.3d at 1112.

[51] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

being discounted and what evidence undermines these claims.[52] "The

clear and convincing standard is the most demanding required in

Social Security cases."[53] Therefore, if an ALJ does not articulate

specific, clear, and convincing reasons to reject a claimant's symptoms,

the corresponding limitations must be included in the RFC.[54]

---

[52] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and

*Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the

ALJ to sufficiently explain why he discounted claimant's symptom

claims)).

[53] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore

v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[54] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and

convincing reasons for finding Lingenfelter's alleged pain

and symptoms not credible, and therefore was required to include these

limitations in his assessment of Lingenfelter's RFC.").

1

2       2.   <u>Plaintiff's Testimony</u>

Plaintiff testified that she was born on December 24, 1973.[55]
When the ALJ noted that she was reading from a sheet or paper, she
said she was reading the date but only knew how to write her name
and birthday.[56] She is 5 feet tall and does not know her weight.[57]
Plaintiff said she never went to school as a child because she lived on a
ranch, but she did go to school later but did not remember what they
taught her.[58] She said that she does not remember when she went to
school but it was about 20 years since.[59]

Plaintiff said she was homeless for the last year and had rented a
room prior to that.[60] She last worked in 2018. [61] She said she got hurt

------

[55] AR 85.

[56] AR 85-86.

[57] AR 86.

[58] *Id.*

[59] AR 87.

[60] *Id.*

[61] *Id.*

at her job and has not been able to work because she has headaches and her arms go numb.[62] She said she has headaches daily and that about 3 days a month she has headaches so bad that she has nausea and vomiting.[63] She says she does not smoke or drink and last had alcohol 3 years prior.[64] She said she has not smoked marijuana and that she uses only Tylenol and aspirin for headaches.[65]

Plaintiff said she is in counseling and attends physical therapy and that she spends her time lying down until her medication helps with her pain.[66] She said that she watches TV and that for the last year she has not been able to sew or stitch because of pain in her hands.[67] She buys microwave meals and stores the food at a friend's house.[68]

---

[62] AR 88.

[63] *Id.*

[64] AR 88-89.

[65] AR 89.

[66] AR 90.

[67] *Id.*

[68] AR 90-91.

She sleeps in her car because her friend smokes and this makes her sick and causes headaches.[69] She only drives to her appointments.[70]

Plaintiff testified that about 9 days a month she has headaches so bad she will vomit and some months it is more.[71] She said that on those days she does not watch tv, she just stays in her car and vomits.[72] She said she cannot read or write Spanish and that if she goes to a restaurant she will ask for a menu with pictures.[73] She said that when she went to the ER in Yakima her head hurt and she did not remember if she told the ER doctors she was taking medication.[74]

3.    Relevant Medical Records

On October 19, 2021, Plaintiff presented to Hilary Richardson, PhD, complaining that she was experiencing migraine headaches while

---

[69] AR 91.

[70] *Id.*

[71] *Id.*

[72] AR 92.

[73] *Id.*

[74] AR 92-93.

studying for her citizenship exam.[75] She noted that reading and writing were new skills and that the migraines were hampering her ability to learn.[76]

On January 13, 2022, Plaintiff presented to ARNP Jennifer McGindt, with complaints of headaches she experienced for the last 7 years since a work incident in which chemical spilled on her face.[77] She said that since having a chemical spilled on her face she experienced pain traveling into her neck and shoulders.[78] She said that she had used migraine medication prescribed to her and it was helpful.[79]

On September 19, 2022, Plaintiff presented to Brenna Boyd for follow-up regarding migraine headaches that were diagnosed as

---

[75] AR 545.

[76] *Id.*

[77] AR 536.

[78] *Id.*

[79] *Id.*

tension headaches and which Plaintiff described as restricting movement in her neck and shoulders.[80]

On November 8, 2022, Plaintiff presented to consultative examiner Marquetta Washington, ARNP, at the Commissioner's request.[81] She reported that she experienced migraines since she injured her knee in 2016 and that the migraines lasted 2-3 hours with nausea but were controlled with Tylenol.[82]

On December 13, 2022, Plaintiff presented to Danielle Smith, ARNP, with "numerous health complaints" and reports that she slipped on ice 4-5 days prior and was having headaches and ear pain.[83] ARNP Smith diagnosed a chronic intractable headache and ordered a migraine cocktail consisting of dexamethasone, metoclopramide, and diphenhydramine.[84]

---

[80] AR 617.

[81] AR 595.

[82] *Id.*

[83] *Id.*

[84] AR 668.

On March 20, 2023, Plaintiff presented to ARNP Paula Dillard, to establish care.[85] ARNP Dillard noted that Plaintiff was diagnosed with depression, anxiety, fibromyalgia, prediabetes, neck pain, cervical radiculopathy, hypothyroidism, and hyperlipidemia.[86]She also noted that Plaintiff had been discharged from her pain management program because she was on a medication contract and had presented to the ER in February for pain medication for a migraine.[87]  On May 1, 2023, Plaintiff returned to ARNP Dillard, complaining of uncontrolled left-sided migraines, that began a few years prior after having carpal tunnel surgery.[88]

4.    The ALJ's Findings

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms of her medically determinable physical impairments not entirely consistent with the

---

[85] AR 841.

[86] AR 841-843.

[87] AR 843.

[88] AR 866.

medical evidence and other evidence in the record.[89]  The ALJ addressed Plaintiff's complaints of physical pain together, rather than separately.  He reasoned:

> She at times presented to the emergency room for headaches and/or musculoskeletal pain, but physical exams and workup were generally normal (Exs. B7F/23-24; B10F/7-9). September 2022 follow up reports with her primary care provider mention neck tenderness and tightness, but otherwise well appearing, alert, and oriented presentation, no acute distress, 5/5 strength, intact sensation, and normal coordination (Ex. B7F/17). February 2023 emergency room records show that despite complaints of headaches, dizziness, and right neck and arm pain, her physical examination showed no significant external findings, and instead normal spine and right upper extremity range of motion, no bony tenderness, intact sensation and strength, no motor or sensory deficit on neurological exam, normal mood and affect, and clear and linear thought process (Ex. B10F/8). Electrocardiogram study also was benign, radiographs were negative for fracture or dislocation, and she was discharged in stable condition (Ex. B10F/8-9).[90]

He continued:

> An earlier November 2022 consultative medical examination report similarly noted complaints of migraines and back, multi joint, and chest pain (Ex. B6F). However, she demonstrated an ability to walk steadily with good

---

[89] AR 30-31.

[90] AR 30.

posture from waiting room to the examining room without difficulty; rise and sit from a chair without assistance; get on and off the exam table, tie, and don and doff her shoes and socks without help; make a full fist with each hand and touch her thumb to the tip of each finger; pick up a coin, button/unbutton, and zip/unzip with little effort; stand on either foot and bend and partially squat (Ex. B6F/3, 5). She had limited shoulder range of motion and declined heel and toe walk due to reported pain, but otherwise demonstrated even and unlabored respiration; regular cardiovascular rate and rhythm; normal other range of motion; no effusion, periarticular swelling, tenderness, heat, redness and thickening of the joints; stable station; negative Romberg; nonantalgic gait; normal tandem walk; 4/5 symmetric grip strength; 5/5 upper and lower extremity strength; normal muscle bulk and tone; no atrophy, spasm, or joint deformity; negative straight leg raise; grossly intact sensation; 2+ deep tendon reflexes; and no muscle tenderness or trigger points (Ex. B6F).[91]

The ALJ noted that Plaintiff's headaches reportedly improved with medication, stating:

> Treatment for her musculoskeletal pain continued with Lyrica, and Cymbalta, and referrals to physical therapy, pain clinic, and rheumatology, as the claimant had never had a rheumatology consultation (Ex. B22F/17, 33, 40, 80). In March 2023, she was started on low dose amitriptyline for headaches/migraines, reportedly never having had workup, and she was referred to neurology (Ex. B22F/17, 19). Her physical examination report noted orientation to 4 spheres, appropriate mood and affect, and normal overview of her extremities, memory, sensation, deep tendon reflexes,

---

[91] *Id.*

insight, and judgment (Ex. B22F/24). On May 2023 follow up, the claimant reported improvement in headaches and sleep with medication, her ROS was negative except for anxiety and depression, and her physical examination was unremarkable (Ex. B22F/34-38). The record since does not show any significant headache complaints (Exs. B22F/37, 48, 76, 84, 97, 105), indicating the medication was effective in controlling her headaches. A May 2023 brain MRI noted right mastoiditis, but no intracranial pathology (Ex. B23F/1). The record does not show any further specialized workup or treatment for headaches. The effects of medication and treatment are considered in determining the weight that can be given to the claimant's symptom reports, as well as in making the residual functional capacity finding.[92]

Earlier in the decision, the ALJ indicated a positive Waddell's sign on examination, which is an indicator of symptom magnification.[93] He noted further that in September 2023, Plaintiff was noted to have engaged in symptom magnification.[94]

### 5.   Analysis

Plaintiff alleges that the ALJ erred by referencing physical examinations and workups. She argues that physical findings are not

---

[92] AR 31.

[93] AR 27, citing to AR 784.

[94] AR 27, citing to AR 877.

an indicator of migraines and had no relevance.[95] Plaintiff argues that the record supports that Plaintiff suffered from migraines when trying to study for her citizenship test, but the ALJ did not include any limitations regarding time off-task or absenteeism in the RFC. The Commissioner argues that the ALJ properly considered that Plaintiff never had a workup for headaches until March 2023 and that once prescribed medication at that time she did not have significant complaints of headaches anymore.[96] The Court agrees with the Commissioner.

Initially, the Court finds that the ALJ's consideration of the physical examinations and workups was appropriate for two reasons. First, as noted above, the ALJ provided his reasoning regarding consideration of Plaintiff's physical impairments, including headaches and musculoskeletal pain, in the same paragraph.  Because the ALJ was addressing Plaintiff's back pain, joint pain and chest pain, his consideration of such findings as nonantalgic gait, lack of swelling and

---

[95] ECF No. 9.

[96] ECF No. 11.

tenderness, normal strength and muscle tone, normal reflexes, and lack of spasm and atrophy was relevant and appropriate.  Additionally, the record indicates that Plaintiff's headaches were diagnosed as "tension headaches" and the ALJ properly considered indicators of tension.

Moreover, the Court concludes that the ALJ's reasoning regarding Plaintiff's response to medication was appropriate and provided substantial support for his findings. The ALJ considered that in March 2023 Plaintiff received both a workup by neurologists regarding her headaches and was prescribed medication to treat the headaches.  He also considered that the medical records establish that the medication successfully treated Plaintiff's headaches because going forward Plaintiff denied any significant headaches.[97]

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms."[98] Symptom

_____

[97] AR 31.

[98] 20 C.F.R. §§ 416.929(c)(3), 404.1529(c)(3). *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments

improvement, however, must be weighed within the context of an "overall diagnostic picture," particularly for mental-disorder symptoms which often wax and wane.[99] If treatment relieves symptoms to an extent that allows the claimant to return to a level of function she had before she developed [symptoms], such treatment can undermine a claim of disability.[100]

The ALJ reasoned:

While the record does reflect that Plaintiff complained of increased migraine headaches in October 2021, when studying for her citizenship examination she stated in January 2022 that medication provided to her was helpful.[101] Moreover, after a consultation with neurologists in March 2023, Plaintiff was prescribed targeted medication and

_____

that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

[99] *Holohan v. Massanari*, 246 F.3d1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods ... are not inconsistent with disability.").

[100] *See* 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).

[101] AR 536, 545.

thereafter did not report further significant migraine symptoms.[102]

The Court concludes that based upon the record before it, the ALJ did not err in his evaluation of Plaintiff's subjective complaints. The Court finds that the ALJ accurately recited the testimony and record and further concludes that the ALJ adequately explained his reasoning. The Court declines to remand as to this issue.

6. <u>Summary</u>

It is the ALJ's responsibility to review and evaluate the conflicting evidence and Plaintiff's subjective complaints.[103] The ALJ meaningfully explained why he evaluated Plaintiff's subjective complaints as he did, and these reasons are supported by substantial evidence.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **AFFIRMED**.

---

[102] AR 31.

[103] *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

2.     The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 11**, enter **JUDGMENT** in favor of **Defendant**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 17th day of December 2025.

_____
EDWARD F. SHEA
Senior United States District Judge